**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ANTHONY GUY,

         *Plaintiff-Appellant,*

v.

CITY OF SAN DIEGO, a public entity;
RICHARD W. GARCIA, an individual;
DAVID MALEY, an individual;
KEVIN FRIEDMAN, an individual,

         *Defendants-Appellees.*

No. 08-56024

D.C. No.
3:06-cv-00766-JM-
LSP

OPINION

Appeal from the United States District Court
for the Southern District of California
Jeffrey T. Miller, District Judge, Presiding

Argued and Submitted June 5, 2009
Submission deferred June 15, 2009
Resubmitted January 12, 2010
Las Vegas, Nevada

Filed June 17, 2010

Before: Ronald M. Gould and Johnnie B. Rawlinson,
Circuit Judges, and Ralph R. Beistline,*
Chief District Judge.

Opinion by Judge Gould;
Dissent by Judge Rawlinson

---

*The Honorable Ralph R. Beistline, Chief United States District Judge
for the District of Alaska, sitting by designation.

8863

## COUNSEL

Steven M. Shewry (argued), Shewry & Van Dyke, LLP, San Diego, California, for the plaintiff-appellant.

Michael J. Aguirre, City Attorney; Andrew Jones, Deputy City Attorney; George Frederick Schaefer (argued), Deputy City Attorney; San Diego, California, for the defendants-appellees.

## OPINION

GOULD, Circuit Judge:

Anthony Guy appeals the district court's denial of his motion for a new trial on damages following a jury verdict

that was reached in his 42 U.S.C. § 1983 action. The jury concluded that police officer David Maley used excessive force when he detained Guy during a late-night confrontation, but the jury awarded only nominal damages, and that prompts Guy's appeal seeking a new trial solely on damages. Guy also appeals the district court's decision not to award him attorney's fees and nontaxable costs as the prevailing party in the lawsuit. We conclude that substantial evidence supported the jury's damages verdict, but we reverse the district court's decision not to award costs and attorney's fees.

# I

Anthony Guy left a bar in the San Diego nightlife district near its closing time on January 2, 2005. Guy had consumed four beers during his three-and-one-half hours at the bar, but he testified that he was not intoxicated when he left. Just outside the bar, Guy saw someone punch another person in the back of the head, and he saw two other people come to the aid of the initial puncher. Guy joined the fight and punched at least one person from behind.

Meanwhile, San Diego Police Department ("SDPD") Officer David Maley and several other SDPD officers were stationed across the street to monitor the area as bars closed for the night. Maley heard another officer, fellow defendant Richard W. Garcia, yell "fight," and Maley observed the fight involving Guy.

The parties dispute the following events. Guy testified at trial that Maley approached him from behind and grabbed him without first identifying himself as a police officer. Guy said that he threw the unknown assailant off him but in so doing Guy's sweatshirt was pulled up and blocked his vision. Guy said he then punched and hit the other person and at that point heard Maley identify himself as a police officer. Maley testified, on the other hand, that he approached Guy from the front at an angle and yelled "police" as he approached. Maley said

that Guy threw a punch at him but missed. Maley testified that he then grabbed Guy and, as Guy pulled back, Guy's sweatshirt came completely off and did not obscure Guy's vision. Maley said Guy then faced him in a fighting stance and thereafter Maley pulled Guy to the ground and pinned him.

Guy testified that once Maley identified himself as a police officer he ceased all resistance for the duration of the incident. Maley testified, however, that Guy continued to struggle and resist after Maley pinned him down and that in response Maley sprayed Guy in the face with pepper spray. Guy did not claim that Maley sprayed him with pepper spray at that point.

The parties do not dispute that after Maley pinned Guy to the ground, Maley handcuffed Guy and led him across the street to a police car. As Maley searched Guy, Guy said, "Why don't you relax a little bit there, tough guy?" Maley then performed a control maneuver during which Guy, while handcuffed, was thrown to the ground. Officers Garcia and Kevin Friedman then assisted Maley in helping to control Guy. At some point while Guy was on the ground near the police car, Maley applied pepper spray directly onto Guy's face.

Guy testified that despite offering no resistance, Maley and the other officers repeatedly kicked and beat him. Maley, Garcia, and Friedman all testified, however, that Guy was not compliant but instead was yelling, cursing, and thrashing his legs. They also testified that Guy was generally physically combative, even after Maley placed him in handcuffs. Friedman and Garcia claimed that they did not beat Guy but only placed their feet on him to stop him from kicking and to assist Maley in controlling him. A third-party witness confirmed the officers' account that they did not punch or kick Guy. The parties agreed that Guy did not resist after Maley applied pepper spray (for the second time, according to Maley's testimony).

Guy testified that several of Maley's actions injured him. Guy claimed that Maley tightened the handcuffs so much that they caused painful welts on his wrists. He also contended that when Maley threw him to the ground the impact tore skin off his shoulder and face. Guy further testified that after throwing him to the ground, Maley yanked and injured Guy's thumb. Finally, Guy claimed that the pepper spray caused him excruciating pain.

Eventually, Maley and Garcia drove Guy to SDPD head-quarters, where Guy complained of multiple injures, specifically to his thumb, and then drove Guy to the hospital for treatment. The parties do not dispute the nature of Guy's injuries.

The SDPD conducted an internal affairs investigation of the incident, which exonerated Maley of any wrongdoing. The district court excluded from trial all evidence relating to the internal affairs investigation at the request of the defendants.

Guy filed a civil complaint against the City of San Diego[1] and officers Maley, Friedman, and Garcia alleging, among other things, that the officers used excessive force in violation of Guy's Fourth Amendment rights and 42 U.S.C. § 1983. The jury returned a special verdict in favor of the defendants on all claims, except that the jury determined that Maley, and not Garcia or Friedman, "violate[d] Plaintiff's Fourth Amendment right to be free from excessive force." The jury also found that "the action(s) of [Maley] cause[d] injury, damage, loss, or harm to Plaintiff." However, the jury awarded no compensatory or punitive damages.

Because of the possible incongruity between the jury's verdict finding a violation and injury but awarding no damages, the district court told the parties it would instruct the jury to award at least one dollar in nominal damages for a constitu-

---

[1]The City of San Diego was later dismissed from the suit.

tional violation, even if it found no compensatory damages. Guy's counsel responded: "I think that's exactly what I'd like them to do." The district court prepared a supplemental special verdict form that asked the jury, "What amount of nominal damages do you award against Defendant Maley" on the Fourth Amendment claim and also asked the jury for its award of punitive damages, if any. Guy's counsel did not object to the wording of the supplemental special verdict form. The jury then awarded one dollar of nominal damages and no punitive damages.

Guy filed a motion for a new trial on damages and a motion for an award of attorney's fees and costs as the prevailing party in a § 1983 action. The district court denied the new trial motion, reasoning that substantial evidence supported the nominal damage award and nominal damages were consistent with the jury's verdict that Maley used excessive force. The district court explained that the parties agreed that Maley used excessive force when he threw Guy to the ground, but the district court concluded that the jury could have found that all of the injuries Guy suffered were the result of the officers' lawful use of force. The district court denied Guy's motion for attorney's fees because it determined that Guy's lawsuit did not achieve any tangible results other than the nominal damage award. Guy timely appealed the denial of both motions.

## II

We review for abuse of discretion a district court's denial of a motion for a new trial. *Wharf v. Burlington N. R. Co.*, 60 F.3d 631, 637 (9th Cir. 1995). We must uphold a jury verdict if it is supported by substantial evidence. *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002). Substantial evidence is evidence "adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion." *Id*. Specifically, we must uphold a jury's damages award unless the amount is "clearly not supported by the evidence, or only based on speculation or guesswork." *L.A. Mem'l Coliseum Comm'n v. Nat'l*

*Football League*, 791 F.2d 1356, 1360 (9th Cir. 1986) (internal quotation marks omitted). "The credibility of witnesses and the weight of the evidence are issues for the jury that are generally not subject to appellate review." *Murray v. Laborers Union Local No. 324*, 55 F.3d 1445, 1452 (9th Cir. 1995).

Finally, we review for abuse of discretion a district court's decision to deny attorney's fees. *Richard S. v. Dep't of Developmental Servs. of the State of Cal.*, 317 F.3d 1080, 1085 (9th Cir. 2003). We have long held that "[a] district court abuses its discretion when it awards fees based on an inaccurate view of the law or a clearly erroneous finding of fact." *Wilcox v. City of Reno*, 42 F.3d 550, 553 (9th Cir. 1994) (internal quotation marks omitted). More recently, in *United States v. Hinkson*, 585 F.3d 1247, 1251 (9th Cir. 2009) (en banc), we held that in assessing abuse of discretion, we determine (1) whether the district court identified the correct legal standard for decision of the issue before it and (2) whether the district court's findings of fact and its application of those findings of fact to the correct legal standard were "illogical, implausible, or without support in inferences that may be drawn from facts in the record."

## III

Guy contends that the jury's nominal damage award cannot be reconciled with its verdict stating that Maley used excessive force and caused injury to Guy. Guy urges that we remand for a new trial on damages because the jury's verdict was not supported by substantial evidence.

**[1]** Our precedent establishes that a party may appeal a jury's special verdict on the ground that the special verdict answers are inconsistent even if that party does not raise the issue to the district court. *See Pierce v. S. Pacific Transp. Co.*, 823 F.2d 1366, 1369 (9th Cir. 1987) ("[W]hen a jury's [special verdict] answers are irreconcilably inconsistent, a reviewing court may review whether the answers support the

judgment even in the absence of either a motion for directed verdict or a motion for JNOV."). However, we have a duty "to reconcile the jury's special verdict responses on any reasonable theory consistent with the evidence." *Id.* at 1370. Emphasizing this duty to reconcile the jury's responses when possible, the Supreme Court has held: "Where there is a view of the case that makes the jury's answers to special interrogatories consistent, they must be resolved that way." *Atl. & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd.*, 369 U.S. 355, 364 (1962); *see also Duk v. MGM Grand Hotel, Inc.*, 320 F.3d 1052, 1059 (9th Cir. 2003).

With the Supreme Court's guidance in mind, we proceed to consider whether the jury's special interrogatory answers can reasonably be reconciled. Guy first argues that the district court erred by directing on the supplemental special verdict form that the jury indicate "[w]hat amount of nominal damages" it would award rather than asking the jury for a compensatory damages award. However, Guy waived this argument because he did not object to the supplemental special verdict form when the court submitted it to the jury. *See Saman v. Robbins*, 173 F.3d 1150, 1155 (9th Cir. 1999). Guy contends that, under *Pierce*, challenges to a special verdict form are not waived even if they are not raised in district court. *See* 823 F.2d at 1369-70. But in *Saman*, we held that *Pierce* is limited to claims "that the jury's answers were inconsistent." 173 F.3d at 1155 n.5. By contrast, when a party is "complaining about the wording of the questions submitted to the jury," it "must object to the form of special interrogatories in the trial court in order to preserve the issue for review on appeal." *Id*. at 1155 & n.5. Guy concedes that he accepted the supplemental special verdict form wording in district court, and thus he cannot challenge on appeal "the wording of the questions submitted to the jury" in the supplemental special verdict form. *Id.* at 1155 n.5.

Nonetheless, even though Guy did not object to the wording of the supplemental special verdict form, we must still

determine whether any reasonable theory consistent with the evidence will serve to reconcile the jury's nominal damage award with its verdict stating that Maley used excessive force and Guy suffered injury.

**[2]** Such a reconciliation takes as one premise the general rule governing damages in a § 1983 action: "Whatever the constitutional basis for substantive liability, damages awarded in a § 1983 action must always be designed to *compensate injuries* caused by the constitutional deprivation." *Farrar v. Hobby*, 506 U.S. 103, 115 (1992) (internal punctuation omitted). "An award of nominal damages is intended to serve as a symbol that defendant's conduct resulted in a technical, as opposed to injurious, violation of plaintiff's rights." *Cummings v. Connell*, 402 F.3d 936, 945 (9th Cir. 2005). We have affirmed nominal damage awards to victorious § 1983 plaintiffs. *See*, *e.g.*, *Soffer v. City of Costa Mesa*, 798 F.2d 361, 363 (9th Cir. 1986) (upholding a nominal damage award in a § 1983 action because the plaintiff did not prove any damages at trial).

**[3]** Guy contends that the jury's special verdict answers are inconsistent on their face because the jury could not have found, as it did, that Maley's actions "cause[d] any injury, damage, loss, or harm" to Guy without also awarding some compensatory damages. We disagree with Guy's argument on this point. The special verdict question on which the jury said that Guy suffered some injury by its terms addressed and concerned *all* of Maley's "action(s)." This question can be construed as asking about injury caused by all of Maley's actions, both those that were justified to subdue Guy, and those which may have been excessive. The special verdict form that elicited that Maley had caused some injury to Guy was not limited to actions of Maley that constituted excessive force. By answering the injury question in the affirmative for Maley, the jury could have meant only that some of Maley's reasonable actions caused injury, and not necessarily that Maley's actions constituting excessive force caused injury.

Guy also argues that given the evidence at trial, the jury's nominal damage award cannot be reconciled with its verdict. Guy contends that although the jury did not specify which of Maley's actions were excessive, each of the possible candidates caused Guy some injury and therefore there was at least some use of excessive force that compensatory damages must remedy.[2]

Specifically, Guy submits that at trial he presented undisputed testimony of injury resulting from each of Maley's actions. Guy testified, for example, that he suffered substantial cuts and scrapes when Maley threw him to the ground, and the district court noted that "all parties agreed" that this incident involved excessive force. Guy also testified that he was injured when Maley handcuffed him tightly, when Maley held him to the ground and twisted his thumb, and when Maley, Garcia, and Friedman physically restrained him. Guy also argues that the pepper spray caused him significant pain and suffering.

[4] Guy is correct that his testimony concerning the nature and cause of his injuries was undisputed at trial. But, contrary to Guy's assertion, it has long been held that a jury may properly refuse to credit even uncontradicted testimony. *E.g.*, *Quock Ting v. United States*, 140 U.S. 417, 420-21 (1891) (holding that even though uncontradicted testimony generally should control a decision of the court, "that rule admits of many exceptions," including when the testimony is inconsistent or contains omissions or when the witness's demeanor

---

[2]Guy's burden of showing that the trial evidence would have compelled a rational jury to find injury from Maley's use of excessive force is made much more difficult and complex because Guy did not ask the court to give a supplemental verdict query to determine which of Maley's actions were excessive. Accordingly, to prevail on this record, Guy would have to show that each of the police actions of Maley that might have been considered a use of excessive force caused him injury. Although he seeks to do that, we conclude that he has not met his burden of showing that all such actions necessarily caused him injury.

raises doubt about the witness's sincerity); *Nat'l Labor Relations Bd. v. Howell Chevrolet Co.*, 204 F.2d 79, 86 (9th Cir. 1953) (referring to the proposition that a trier of fact must accept uncontradicted testimony as "an ancient fallacy"); *see also Smith v. Comm'r*, 800 F.2d 930, 935 (9th Cir. 1986) (doubting credibility); *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 514 n.8 (9th Cir. 1985).

**[5]** Here, we know that the jury discredited at least some of Guy's testimony because it determined that Garcia and Friedman did not use excessive force even though Guy testified that they repeatedly beat him when he offered no resistance. The jury likely concluded that Guy resisted arrest during at least part of the incident, and it may also have determined that Guy's injuries resulted from his own thrashing and kicking on the ground or from the officers' justified responses to Guy's conduct. Furthermore, even if it was excessive force for Maley to throw Guy to the ground, the jury could have discredited Guy's testimony that he was injured by this particular use of force. In trying to reconcile the different segments of the jury's verdict, we cannot properly ignore the possibility that the jury concluded Maley acted excessively in some particular action, and not in others, and that the injury done to Guy by Maley was from Maley's actions not amounting to use of excessive force.

**[6]** Because the jury discredited at least part of Guy's testimony, and because the jury's nominal damage award can be reconciled with its excessive force and injury verdict on a "reasonable theory consistent with the evidence," *Pierce*, 823 F.2d at 1370, we must accept this interpretation. *See Atl. & Gulf Stevedores*, 369 U.S. at 364. Guy has not shown that the jury's verdict was clearly not supported by the evidence or only based on speculation or guesswork. *See L.A. Mem'l Coliseum Comm'n*, 791 F.2d at 1360. Because a reasonable reconciliation of the jury's decisions is feasible, we conclude that substantial evidence supported the jury's verdict and that the

district court did not abuse its discretion in denying a new trial on damages.[3]

## IV

**[7]** Despite winning only nominal damages, Guy is still a prevailing party in a § 1983 action, and he is therefore eligible for an award of attorney's fees. *See Wilcox*, 42 F.3d at 554. However, because the jury awarded only nominal damages, attorney's fees are appropriate if "the lawsuit achieved other tangible results—such as sparking a change in policy or establishing a finding of fact with potential collateral estoppel effects." *Id.* at 555. One tangible result that Guy contends his lawsuit achieved is alerting the SDPD internal affairs division that its procedures for administrative review of excessive force complaints are flawed because an impartial jury contradicted its determination that Maley acted reasonably. Guy also contends that the jury's verdict alerted the SDPD that Maley must be watched with a keen eye and that Maley now knows that his conduct was suspect and if repeated may expose him to an increased likelihood of an adverse jury verdict.

The jury awarded no compensatory damages, and this lack of damages normally would weigh against a fee award. *See Farrar*, 506 U.S. at 115. But on the other hand, the jury held that Maley used excessive force, and an award of fees is justifiable if the jury verdict prompted a tangible benefit. Here, we conclude that a fee award serves a purpose beneficial to society by encouraging the City of San Diego to ensure that all of its police officers are well trained to avoid the use of exces-

---

[3]Our colleague in dissent contends that if the jury intended to find that Guy's injuries were caused by Officer Maley's lawful actions, "it stands to reason that the jury would have similarly found that Officer Maley's actions did not cause injury to Guy." However, the dissent's reasoning on this does not "stand to reason" and in truth does not at all follow. The jury could have rationally determined that Maley injured Guy as part of Maley's reasonable actions when Guy was resisting arrest.

sive force, even when they confront a person whose conduct has generated the need for police assistance.

Perhaps more important, a fee award sends an unmistakable message to the City and its police department that even when police officers reasonably must take forceful actions in response to an incident, and even when such forceful actions are permissible at first, if the officers go too far by unnecessarily inflicting force and pain after a person is subdued, then the force, unnecessary in part of the action, can still be considered excessive. As an example, suppose extreme force is needed to subdue a violent offender. Nonetheless, for police officers to then kick the person when he or she is down, or to use pepper spray to cause pain without any need to use it for safety, may be considered excessive force by a jury. This is significant here because the SDPD internal affairs division concluded, contrary to the jury, that Maley did not use excessive force. *See Morales v. City of San Rafael*, 96 F.3d 359, 363-64 (9th Cir. 1996) (reasoning that if the jury had awarded only nominal damages, the plaintiff would nonetheless have been entitled to attorney's fees because his victory served the public purpose of helping to protect him and others from being subjected to similar unlawful treatment in the future and constituted a warning to law enforcement officers to treat civilians in a constitutional manner).

**[8]** The district court recognized that in a case where a civil rights prevailing party received only a nominal award, as here, to gain attorney's fees a civil rights prevailing party would have to show that the "lawsuit achieved other tangible results." In reaching this conclusion, which we think a correct statement of law, the district court relied on our precedent in *Benton v. Or. Student Assistance Comm'n*, 421 F.3d 901 (9th Cir. 2005). There, despite the plaintiff receiving only a nominal damage award, the district court awarded attorney's fees on the view that the public would benefit from the plaintiff's success in showing the bias of a state official toward educators who had graduated from certain educational institutions,

and that the plaintiff had achieved an endorsement of her credentials. *Id.* at 906-08. We reversed the district court's fee award, explaining that the mere fact that rights were violated did not support a fee award and the judgment just showed that the plaintiff prevailed, not that her credentials were trustworthy. *Id.*

The district court in this case noted the grounds recited by Guy in support of an award for attorney's fees: that it would show the SDPD that its investigation was inadequate and that it would keep a watchful eye on officer Maley thereafter. But the district court concluded that Guy prevailing on his excessive force claim only showed that "Maley at some point during his protracted contact with plaintiff used excessive force." It did not necessarily support that the SDPD would thereafter keep a "watchful eye" on Maley. Further, Guy did not prevail at all on his claims against other defendants.

Thus the case on this issue boils down to whether the district court abused its discretion in deciding that Guy's suit, with its nominal damage award, had produced no tangible results. In *Hinkson* we recently stated that in assessing abuse of discretion we will consider (1) whether the district court identified the correct legal standard for decision of the issue before it and (2) whether the district court's findings of fact and its application of those findings of fact to the correct legal standard were "illogical, implausible, or without support in inferences that may be drawn from facts in the record." 585 F.3d at 1251. Here, the district court stated the law correctly, and the sole question is whether there was abuse of discretion in the district court's application of the tangible results test.

It might be argued that the district court's decision was logical and plausible because there is no evidence that the SDPD changed its investigation procedures or modified its use-of-force policies because of this case and therefore Guy did not produce a tangible result. Likewise, Guy did not provide specific evidence that the SDPD is watching Maley more closely

as a result of this case, particularly in light of the one dollar nominal damage award.

**[9]** It is a close question, but we conclude that the district court abused its discretion in completely rejecting Guy's request for attorney's fees. The jury verdict that some of Maley's force was excessive offers clear and important guidance to the police department, which is a sufficiently tangible result. *See Morales*, 96 F.3d at 363-64. The SDPD now knows, if it did not know before when it conducted its internal review, that even if Maley's force was initially justified, if it went too far, i.e., if he harmed Guy unnecessarily or gratuitously after Guy had been subdued, then a jury may determine that force was excessive.

**[10]** We are therefore not prepared to say that the jury verdict produced no tangible results. It is logical to expect, in the face of this jury verdict, that the police department would take a closer look at the level of force used by its police officers after they have subdued a suspect. Such a result, under the circumstances of this case, would justify some amount of costs and attorney fees. Of course, in determining the amount of such an award, the trial court may consider, among other things, Guy's limited success in obtaining only nominal monetary damages. *See Farrar*, 506 U.S. at 115.

**[11]** We remand to the district court for a determination of the amount of costs and attorney's fees to be awarded. Pursuant to Federal Rule of Appellate Procedure 39(a) and Ninth Circuit General Order 4.5(e), each party shall bear its own costs on appeal.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

RAWLINSON, Circuit Judge, dissenting in part:

I agree in principle that a plaintiff may be a prevailing party when he is awarded nominal damages. However, considering the facts of this case, I would not reach that issue. Instead, I would hold that the jury's award of nominal damages cannot be reconciled with the record evidence in this case.

It is important to keep in mind the foundational rubric that governs our review of the damages award. As the majority recognizes, our duty to reconcile the jury's special verdict responses is predicated on consideration of "any reasonable theory *consistent with the evidence*." *Pierce v. S. Pacific Transp. Co.*, 823 F.2d 1366, 1370 (9th Cir. 1987) (citations omitted) (emphasis added). In applying this precedent, the majority opinion offers the following statements of justification to support its holding that the award of nominal damages was consistent with the finding of excessive force:

- The jury *likely* concluded that Guy resisted arrest during at least part of the incident . . .

- [The jury] *may* also *have determined* that Guy's injuries resulted from his own thrashing and kicking on the ground or from the officers' justified responses to Guy's conduct.

- [E]ven if it was excessive force for [Officer] Maley to throw Guy to the ground, the jury *could have discredited* Guy's testimony that he was injured by this particular use of force.

- In trying to reconcile the different segments of the jury's verdict, we cannot properly ignore the *possibility* that the jury concluded [Officer] Maley acted excessively in some particular action, and not in others, and that the injury done to Guy by [Officer] Maley was from [Officer]

> Maley's actions not amounting to use of excessive force.

*Majority Opinion*, pp. 8874-75 (emphases added).

Notably, none of these statements is linked to the evidence admitted at trial. For example, there is no reference to any testimony or other evidence that even remotely suggests that Guy was injured by "his own thrashing and kicking on the ground" or that his injuries were of the type that would be inflicted by "thrashing and kicking on the ground." Rather, the majority's statements of justification stray perilously closer to speculation than to reconciliation of the verdict with the evidence in the record.

The majority seeks to minimize Guy's uncontroverted testimony regarding the extent of his injuries by postulating that the jury may have discredited Guy's uncontradicted testimony. *See Majority Opinion*, p. 8875. However, the cases in support of this proposition are easily distinguished. In *Quock Ting v. United States*, 140 U.S. 417, 420 (1891), the United States Supreme Court explicitly acknowledged that uncontradicted testimony generally controls the outcome of a case. The Court then recognized that there are exceptions to the general rule that uncontradicted testimony controls the outcome of a case. The specific exceptions noted in *Quock Ting* and parroted by the majority, *see* Majority Opinion, p. 8874-75, were inconsistent testimony, testimony containing omissions, or a demeanor on the part of the witness that raises doubt about the witness's sincerity. *See Quock Ting*, 140 U.S. at 420-21. However, there is not one scintilla of evidence in the record to suggest that Guy's testimony was inconsistent or contained omissions, or that anything about Guy's demeanor raised doubts about his credibility. Nothing of the sort was even suggested in Appellees' brief on appeal or during oral argument.

The other cases cited by the majority make the same point. In *National Labor Relations Bd. v. Howell Chevrolet Co.*, 204

F.2d 79, 86 (9th Cir. 1953), we recognized that "carriage, behavior, bearing, manner and appearance of a witness,—his demeanor,—" may cause the trier of fact to reject uncontradicted testimony. Again, not a hint of demeanor influence is apparent from the record, the briefing or from the oral argument of the parties. Indeed, a crucial distinction between this case and *Howell Chevrolet* is that the trier of fact in *Howell Chevrolet* "resolved questions of credibility in favor of those who testified on the other side." *Id.* The majority makes this point by observing that "the jury discredited at least some of Guy's testimony because it determined that Garcia and Friedman did not use excessive force even though Guy testified that they repeatedly beat him when he offered no resistance." Majority Opinion, p. 8875. As an initial matter, I note that it is not a foregone conclusion that Guy's testimony was discredited by the jury. Also, it is just as likely that the jury credited his testimony in accordance with the judge's instructions, but determined that the force used did not meet the legal definition of excessive force. This observation is also notable for what it omits—that the jury absolutely did not discredit Guy's testimony as it related to the actions of Officer Maley. As reflected in the jury's response to the special interrogatory, the jury credited Guy's testimony on this point, and affirmatively found that Officer Maley used excessive force against Guy, and that Officer Maley's actions caused injury to Guy.

*Smith v. Comm'r*, 800 F.2d 930 (9th Cir. 1986) is singularly unhelpful to the majority. The witness's testimony in that case, although uncontroverted, was found by the trier of fact to be "vague and inadequate." *Id.* at 935. No such finding exists in reference to Guy's testimony. The same can be said for the majority's bare citation to note 8 of *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 514 (9th Cir. 1985). Bottom line, reference to the cases cited by the majority, cannot obscure the fact that the jury expressly credited Guy's testimony that Officer Maley used excessive force against Guy, and that Officer Maley's actions caused injury to Guy, as reflected in the jury's response to the special inter-

rogatory. At the same time, the jury found that the other two officers involved did not use excessive force against Guy and that their actions did not cause his injuries. If, as the majority posits, the jury intended to find that Guy's injuries were caused by Officer Maley's "lawful" actions, it stands to reason that the jury would have similarly found that Officer Maley's actions did not cause injury to Guy. In sum, the majority's purported reconciliation of the jury's verdict completely disregards the probative evidence presented to the jury. *Cf. Pierce*, 823 F.2d at 1370 (expressly linking its analysis to evidence in the case).

Because the evidence in this case is not compatible with the reconciliation analysis reflected in the majority opinion, I do not agree that the district court acted correctly in denying Guy's motion for a new trial. In view of the undisputed evidence of physical injury to Guy, I would vacate the nominal damage award as irreconcilable. For that reason, I respectfully dissent from the judgment entered by the majority.